**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| RUSSELL B. SMITH, JR. and RUSSELL B. SMITH, JR., Personal Representative of the ESTATE OF IRINA A. SMITH, DECEASED,<br><br>Plaintiffs,<br><br>v.<br><br>BNSF RAILWAY COMPANY, et al.,<br>Defendants. | No. CV 23-82-GF-BMM<br><br>ORDER |

## INTRODUCTION

Plaintiffs Russell B. Smith, and Russell B. Smith, Jr., Personal Representative of the Estate of Irina A. Smith (collectively "Plaintiffs"), have filed a motion for sanctions based on the spoliation of evidence. (Doc. 48.) Defendants BNSF Railway Company ("Defendants") oppose the motion. (Doc. 54.)

## BACKGROUND

The Court has been involved with the discovery and is familiar with the circumstances of the case. Irina Smith and her dog were tragically struck by a BNSF railcar while walking on the track outside Chinook, Montana. (Doc. 1.) Plaintiffs allege that BNSF Railway Company failed to preserve crucial video evidence from a train involved in a fatal collision that resulted in the death of Plaintiff's wife. (Doc.

1

47 at 10.) BNSF preserved less than three minutes of the video, despite alleged federal regulations requiring the preservation of such evidence. (*Id.*)

The Court held discovery conferences on September 11, 2024, and October 10, 2024. (Doc. 22; Doc. 31.) The Court also issued a protective order governing discovery and production of confidential information. (Doc. 19.) The Court held a hearing on sanctions on July 2, 2025. (Doc. 58.)

## LEGAL STANDARD

Spoliation represents the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Wells v. BNSF Railway Co.*, 2023 WL 8434778, (D. Mont. Aug. 18, 2023). A court may sanction a party for spoliation of evidence under its inherent powers or pursuant to Rule 37 of the Federal Rules of Evidence. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *see also Gregory v. State of Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024). Federal Rules of Evidence Rule 37 (e) states that:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;

>(B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>(C) dismiss the action or enter a default judgment.

Pursuant to Rule 37(e), when a covered loss of electronically stored information occurs, "the court must make the specified findings required by paragraphs (1) or (2) before it may impose a sanction, and those paragraphs require different findings depending upon the nature and severity of the sanction." *Gregory*, 118 F.4th at 1078. The court may impose sanctions under its inherent authority under paragraph (1) "upon [a] finding of prejudice to another party from loss of the information," to impose remedial sanctions that are "no greater than necessary to cure the prejudice" resulting from the loss. *Id*. citing Fed. R. Civ. P. 37(e)(1). "Paragraph (2), however, establishes a more demanding standard before the court may impose certain types of severe sanctions." *Id*. Such sanctions may be imposed "*only* upon finding that the party [who caused the loss] acted with the *intent* to deprive another party of the information's use in the litigation." *Id*. citing Fed. R. Civ. P. 37(e)(2) (emphasis in original). A court cannot impose sanctions under paragraph (2) based on its inherent authority but rather must apply Rule 37(e). *Id*. at 1080.

## DISCUSSION

Plaintiffs seek an order sanctioning BNSF for failure to preserve locomotive video of which it was aware and should have known its importance to Plaintiffs'

3

case. (Doc. 47 at 10.) Plaintiffs allege that BNSF's claims representatives anticipated litigation, and documents were withheld under work product privilege. (*Id.* at 3.) BNSF's destruction of the video evidence is considered willful spoliation, as it had notice of the evidence's relevance. (*Id.* at 23.) Plaintiffs argue that BNSF's actions have prejudiced their ability to present their case, as the video was crucial to demonstrating the Engineer's negligence. (*Id.* at 24.) Plaintiffs further allege that BNSF has a history of spoliation and discovery abuses warranting sanctions to deter future misconduct. (*Id.* at 25.) Plaintiffs seek adverse inferences against BNSF, arguing that the destroyed evidence would have been unfavorable to BNSF's case. (*Id.* at 28.) Additional sanctions, including cost-shifting and attorney fees, are requested to compensate for the prejudice suffered by Plaintiffs. (*Id.* at 32.)

BNSF contends that sanctions under Rule 37(e) of the Federal Rules of Civil Procedure are not warranted because no evidence exists of intent to deprive Plaintiffs of information. (Doc. 54 at 10.) Rule 37(e) requires a finding of intent to deprive another party of information for severe sanctions to be imposed. (*Id.*) BNSF argues that the video evidence it preserved proves sufficient and that additional video was not required to be maintained. (*Id.* at 11.) BNSF asserts that the Plaintiffs' claims are based on speculation and unsupported medical opinions regarding the train Engineer's health. (*Id.* at 13.) BNSF maintains that it followed its internal guidelines for video preservation and that the video captured the relevant events. (*Id.* at 11.)

BNSF disputes the applicability of 49 C.F.R. § 229.135(e) to locomotive video, arguing that it pertains to event recorders, not video recorders. (*Id*. at 18.) BNSF emphasizes that no evidence exists of bad faith or intent to deprive Plaintiffs of evidence, and that the preserved video adequately captures the incident. (*Id*. at 21.)

The parties agree that this locomotive video qualifies as Electronically Stored Information ("ESI"). (Doc. 54 at 8.) This threshold agreement opens the doors to Rule 37(e). Before the Court can issue sanctions under paragraph (1) or (2) of Rule 37(e), however, the Court also must find (1) that the ESI at issue "should have been preserved in the anticipation or conduct of litigation;" (2) that it "is lost because a party failed to take reasonable steps to preserve it; and" (3) "it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The Court concludes that the pleadings fails at step (1): that the ESI at issue "should have been preserved in the anticipation or conduct of litigation." *Id*.

BNSF preserved three and a half minutes of inward and outward-facing locomotive videos from the incident. (Doc. 54 at 12 Ex. H ¶ 9.) The video begins over one mile away from the incident site, captures the incident, and lasts for 30 seconds beyond when the train came to a stop. (Doc. 54 at 5.) Smith does not appear in view until immediately before the incident. (*Id*.) The Court viewed the video and stated that "[t]he video of the incident that the Defendants' produced proves sufficient." (Doc. 41 at 4.) The inward and outward-facing video allow the viewer

to see both the tragic incident as it occurs, but also the state of the Engineer and his level of attention. The Court does not need hours of video of the Engineer to assess whether his condition rendered the railroad negligent. The pertinent video encompasses the period of time surrounding the incident when the Engineer's physical state actually could have impacted the outcome.

Plaintiffs are correct that BNSF "had 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 754, 766 (9th Cir. 2015) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). BNSF reasonably foresaw litigation and acted to preserve the relevant portions of the video in addition to the event recorder data. (Doc. 54 Ex. 6 ¶ 4.) BNSF's actions in this case stand in contrast to its past actions in the case cited by Plaintiffs, *Spotted Horse v. BNSF Railway Co.*, 350 P.3d 52 (Mont. 2015).

The Montana Supreme Court in Spotted Horse sanctioned BNSF for failing to preserve any video evidence of the injury at issue. *Id*. An employee had been injured while at work and BNSF neglected to preserve any portion of video from the incident from any of the numerous camera angles, despite supervisors watching some of the video within hours after the incident. *Id*. at 322. The Montana Supreme Court stated that it "reject[s] the notion that BNSF is entitled to unilaterally determine which evidence is relevant or valuable when investigating an alleged

6

accident preceding litigation." *Id*. Yet, BNSF must to some extent make a determination about which evidence is relevant when investigating an alleged accident preceding litigation. The notion that BNSF cannot make a single decision in this regard could lead to the conclusion that BNSF always must preserve recordings from every single train forever because it realistically can always anticipate litigation, and it cannot determine what particular video would be relevant to that litigation. This hypothetical is exaggerated but the point holds true. BNSF must decide video relevance at some point preceding litigation. BNSF should not unilaterally determine that video evidence depicting an accident has no relevance whatsoever, as it did in *Spotted Horse*. BNSF made a reasonable decision in this case to preserve the video sufficiently before and after the incident, depicting both the incident and the inward-facing view of the Engineer. Unlike in *Spotted Horse*, there is no unfairness as BNSF has preserved and shared the relevant video evidence.

Plaintiffs cites *Kowalewski v. BNSF Ry. Co.*, No. 27-CV-17-145, 2018 WL 1512810, (Minn. D.C. Feb. 25, 2018), for the same contention that BNSF cannot credibly argue it did not know it should have preserved more video evidence related to the incident. The facts in *Kowalewski* prove similar to those in *Spotted Horse*. BNSF in *Kowalewski* failed to preserve the video and audio depicting the employee following his exposure to toxic chemicals, the video and audio of the actual exposure trains, and the video and audio of the immediately proceeding investigation into the

7

exposure trains by supervisors. *Id*. at 9-10. BNSF did preserve some less relevant video and audio recordings but failed to preserve any relevant videos depicting the state of the employee following the incident. *Id*. at 10. BNSF also represented to the court that no functioning video cameras existed in one relevant area which contradicted the sworn testimony of witnesses in the case. *Id*. BNSF's actions in this case do not equate to its behavior in *Kowalewski* as it clearly preserved both available angles of the incident in addition to sufficient video before and after the incident.

BNSF did not violate internal guidelines or federal regulations in its preservation of accident data. BNSF's internal guidelines state the length of video to preserved in an incident two minutes before impact or incident, until 30 seconds after the train comes to a stop. (Doc. 47 at 12; Doc. 54 Ex. 5 ¶ 4.) The video produced complies with these guidelines.

Section 49 CFR 229.135(e) provides that train operators must preserve 48 hours of data from locomotive-mounted recording devices. 49 C.F.R. § 229.135(e). This section pertains to event recorders and similar devices, also known as "black box" event recorders, not to video recorders as detailed by BNSF. The court in *CSX Transp., Inc. v. Total Grain Mktg., LLC*, No. 11-CV-171-WDS, 2013 WL 1337284, at *16 (S.D. Ill. Mar. 29, 2013), found that because the "video recorder does not record functions of the locomotive as listed in the federal regulation, it is not

'covered.'" BNSF properly preserved event recorder data pursuant to federal regulations and "produced 13.5 minutes of event recorder data printouts for each locomotive on the November 14, 2020, train at exhibits BNSF/Smith 1028-265 to 1028-1220." (Doc. 54 Ex. 6 ¶ 4). The event recorder data "starts approximately ten minutes prior to the start of the video and then covers the approximately three-and-one-half minutes of operation displayed in the video." (*Id.*)

Not only does this production of event recorder data comply with federal regulations, but it also further weakens Plaintiffs' spoliation claim because it suggests that at least some of the relevant evidence can be "restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The event recorder data indicates that the Engineer sounded the horn at the crossing before the collision site pursuant to horn procedures. (Doc. 54 at 17.) The event recorder data does not provide all the evidence Plaintiffs want. It does not provide important insight into all the actions of BNSF before and following the incident.

BNSF followed its internal guidelines and, foreseeing litigation, it preserved the relevant video evidence of the incident. BNSF could not have reasonably foreseen that one of the primary issues in the case would have been the medical condition and physical state of the Engineer over a full day's work despite its knowledge of the Engineer's cancer. Even if BNSF could have foreseen that the state of the Engineer would be a central issue in litigation, that does not mean BNSF

9

should have foreseen that hours upon hours of video footage would thus be necessary. BNSF acted appropriately given the circumstances. The Court cautions BNSF that this conclusion applies only to the facts of this case. This holding does not mean that compliance with BNSF's internal guidelines will always be sufficient as it concerns discovery disputes in litigation.

The Court concludes that BNSF did not fail to preserve relevant evidence under Rule 37(e) and thus no sanctions prove appropriate or necessary. The Court will not address the parties' discussion of BNSF's alleged pattern of destruction and discovery abuses. The Court finds that BNSF did not commit a discovery abuse in this case.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Plaintiffs' Motion for Sanctions (Doc. 48) is **DENIED.**

**DATED** this 9th day of October, 2025.

_____
Brian Morris, Chief District Judge
United States District Court