**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| RUSSELL B. SMITH, JR. and RUSSELL B. SMITH, JR., Personal Representative of the ESTATE OF IRINA A. SMITH, DECEASED,<br><br>Plaintiffs,<br><br>v.<br><br>BNSF RAILWAY COMPANY, et al.,<br>Defendants. | No. CV 23-82-GF-BMM<br><br>ORDER |

## INTRODUCTION

Plaintiffs Russell B. Smith, and Russell B. Smith, Jr., Personal Representative of the Estate of Irina A. Smith (collectively "Plaintiffs"), filed a complaint against Defendant BNSF Railway Company ("BNSF") alleging negligence, premises liability, emotional distress, wrongful death, loss of society, companionship, funeral and burial costs and damages. (Doc. 1.) BNSF has moved for summary judgment on all claims. (Doc. 70.) Plaintiffs oppose the motion. (Doc. 87.)

## BACKGROUND

The Court has been involved with the discovery and is familiar with the circumstances of the case. Irina Smith and her dog were tragically struck by a BNSF railcar while walking on the track outside Chinook, Montana. (Doc. 1.)

1

**LEGAL STANDARD**

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248.

**DISCUSSION**

BNSF asserts that a reasonable jury only could conclude that "Mr. and Mrs. Smith's negligence exceeded any negligence on the part of BNSF, thereby necessitating summary judgment on behalf of BNSF." (Doc. 72 at 6.) BNSF also asserts that "Plaintiffs' premises liability claim is barred by Montana's recreational use statute, Mont. Code Ann. §70-16-302(1)." (*Id.*) The Court will address each argument in turn.

  I. <u>Plaintiffs' Contributory Negligence</u>

Pursuant to Mont. Code Ann. § 27-1-702, "a plaintiff's contributory negligence is a defense to a charge of negligence." MCA § 27-1-702. "Contributory fault does not bar recovery in an action by a person or a person's legal representative to recover tort damages for death of a person or injury to a person or property if the contributory fault was *not greater than the fault of the defendant* or the combined

fault of all defendants and nonparties, but damages allowed must be diminished in proportion to the percentage of fault attributable to the person recovering." *Id.* [emphasis added]. Montana did not adopt a scheme where "no plaintiff is completely barred from recovery because of her contributory negligence." *Giambra v. Kelsey*, 162 P.3d 134, 144 (Mont. 2007) (quoting Dobbs, The Law of Torts § 201, at 505). Rather, "Montana's comparative negligence scheme employs the 'greater than' version of comparative negligence." *Id.*; *see also Johnson v. Re-Em Transportation Servs., Ltd.*, No. CV 16-49-M-DLC-JCL, 2017 WL 1007590, at *2 (D. Mont. Mar. 13, 2017). "Under § 27–1–702, MCA, a plaintiff may not recover if the plaintiff is found to be greater than fifty percent negligent." *Giambra*, 162 P.3d at 144.

"[T]he issue of contributory negligence on the part of the plaintiff and the degree of comparative negligence, if any, is normally an issue for the jury or fact-finder to resolve." *Peterson v. Eichhorn*, 189 P.3d 615, 622 (2008). "Whether a plaintiff was contributorily negligent is a question for the fact-finder, unless reasonable minds could not draw different conclusions from the evidence. *Id.* citing *Stenberg v. Beatrice Foods Co.,* 576 P.2d 725, 727–28 (1978) and *Hart–Anderson v. Hauck,* 781 P.2d 1116, 1117–18 (1989).

BNSF contends that "reasonable minds could not conclude that BNSF was negligent, let alone that any negligence attributable to BNSF outweighs the negligence of the Smiths." (Doc. 71 at 18.) The Court disagrees. BNSF asserts that

3

reasonable minds could not conclude that BNSF's negligence outweighed that of the Smiths because the Smiths "were in a far better position to avoid the accident than the train crew," and "BNSF provided adequate warning to Mrs. Smith," particularly given her status as a trespasser. (*Id*. at 18, 20.) Courts routinely find that disputes over factual allegations such as these create questions for the fact-finder.

The Montana Supreme Court in *Giambra* discussed the role of the jury in evaluating the negligence of both parties when there is evidence that both parties violated statutory regulations in the incident. *Giambra*, 162 P.3d at 144 citing *Reed v. Little*, 680 P.2d 937 (1984). *Giambra* quoted the opinion from *Reed* which stated that "[t]he fact that both parties may well have been guilty of statutory violations is a further reason for leaving the comparison of the negligence to the jury in this case." *Id*. at 145.

Courts have addressed the question of contributory negligence at the same posture, on summary judgement, and specifically concluded the question was one for the jury. The court in *Parrick ex rel. Parrick v. FedEx Ground Package Sys., Inc.*, No. CV 09-95-M-DWM-JCL, 2010 WL 3614117, at *4 (D. Mont. Aug. 3, 2010), *report and recommendation adopted*, No. CV 09-95-M-DWM-JCL, 2010 WL 3614120 (D. Mont. Sept. 7, 2010), addressed the plaintiff's argument that the defendant's "version of events [was] so blatantly contradicted by the weight of the evidence, that no reasonable jury could believe his testimony." The court

4

concluded otherwise, finding that a ruling on summary judgement improperly would require the court to judge credibility. *Id.* at 3. *Pierce v. ALSC Architects, P.S.*, 890 P.2d 1254, 1260 (Mont. 1995), similarly concluded that the issue of contributory negligence should have gone to the jury when there were facts to suggest the plaintiff may have been contributorily negligent. *Pierce* determined that "a motion for a directed verdict is proper only in the complete absence of any evidence which would justify submitting an issue to the jury." *Id.*

The Montana Supreme Court reversed the trial court's order granting summary judgement in *Hart-Anderson* because "the record reveals issues of fact upon which reasonable men could differ." *Hart-Anderson*, 781 P.2d at 1117. The trial court in Hart-Anderson had granted summary judgement to the plaintiff on the issue of contributory negligence after the weight of the testimony suggested the car accident was the defendant's fault. *Id.* The Montana Supreme Court concluded that testimony from the defendant that contradicted this testimony demonstrated that reasonable minds could have differed in drawing conclusions from the evidence, and a directed verdict was improper. *Id.* at 1118.

Courts have granted summary judgement on the issue of contributory negligence only when virtually no evidence exists to dispute fault. The court in *Johnson* granted summary judgement when it was conclusively established that the plaintiff "was not acting in any manner—immediately before or at the time of the

5

collision—that contributed to the cause of the collision." *Johnson*, No. CV 16-49-M-DLC-JCL, at *1. The Montana Supreme Court in *Larchick v. Diocese of Great Falls-Billings*, 208 P.3d 836, 851 (2009), awarded summary judgement after the defendants presented meager evidence to demonstrate contributory negligence. *Larchick* concluded even if it viewed as true the defendants' evidence that the plaintiff allegedly had hit another player in the ankle with a lacrosse stick before the plaintiff was hit in the face with a lacrosse stick by that other player, nothing suggested that was more than incidental contact in a P.E. activity. *Id*. *Larchick* noted the defendants' argument was even more unpersuasive because the school itself, an entity of the defendants, had not blamed the plaintiff for the incident. *Id*. These cases stand in contrast to the situation in this matter.

Plaintiffs have made sufficient factual allegations to create a question of fact for the jury to decide on the issue of contributory negligence. Plaintiffs allege that no warning signs were visible from the street or parking area. (Doc. 87 at 7.) Personnel working on the tracks commonly used the parking area. (*Id*.) The Collision Site was at an "abandoned railroad crossing that the Train crew had been through many times," but BNSF had "failed to remove evidence of the former crossing at the Collision Site and to restore the former crossing area to pre-crossing condition, leaving gravel and a path that leads to a road on the other side of the track from the parking area." (*Id*.) "[T]here was apparent evidence of pedestrian

6

use, including lack of vegetation and gravel remaining from the old crossing that led to a road on the other side of the track from the parking area." (*Id*. at 13-14.)

The locomotive video produced by BNSF "shows that just prior to the Collision, the BNSF Train Engineer Holmes was sitting far back in his chair with his feet propped up." (*Id*. at 8.) The Engineer failed to see Mrs. Smith on the track until the Conductor notified him. (*Id*. at 9.) "Conductor Casey spotted Mrs. Smith on the tracks but failed to engage the horn or emergency mode, despite having access to the horn and emergency control." (*Id*.) The Engineer suffered from cancer which later killed him. (*Id*.) The status of Mrs. Smith on the railroad does not change the Court's analysis of whether summary judgement on the issue of contributory negligence is proper.

These allegations create sufficient dispute as to material facts to avoid summary judgement even with the asserted facts and case law from BNSF which indicate contributory negligence. The evidence does not need to create a close call but rather, merely permit a reasonable jury to draw different conclusions. It remains plausible in this case that a reasonable mind could conclude that Plaintiffs' contributory negligence was less than fifty percent in comparison to Defendants' negligence. The Court will deny summary judgement to BNSF on the issue of contributory negligence.

  II. <u>Plaintiffs' Premises Liability Claim and Montana's Recreational Use Statute</u>

Mont. Code Ann. § 70-16-302(1) provides:

> (1) A person who uses property, including property owned or leased by a public entity, for recreational purposes, with or without permission, does so without any assurance from the landowner that the property is safe for any purpose if the person does not give a valuable consideration to the landowner in exchange for the recreational use of the property. The landowner owes the person no duty of care with respect to the condition of the property, except that the landowner is liable to the person for any injury to person or property for an act or omission that constitutes willful or wanton misconduct.

MCA § 70-16-302(1).

The statute defines "[r]ecreational purposes" to "include[] hunting, fishing, swimming, boating, waterskiing, camping, picnicking, pleasure driving, biking, winter sports, hiking, touring or viewing cultural and historical sites and monuments, spelunking, or other pleasure expeditions." Mont. Code Ann. § 70-16-301. BNSF asserts that Plaintiffs' purpose at the site, to photograph wildlife and walk their dog so it could smell pheasants, qualifies as an "other pleasure expedition[]," pursuant to § 70-16-301. (Doc. 71 at 27.) Plaintiffs do not object.

BNSF asserts that because Plaintiffs' actions constitute recreational activity, the only duty BNSF owed to them was to avoid "willful or wanton misconduct." (*Id.*) BNSF asserts that "the undisputed facts establish that there was no willful or wanton misconduct" on the part of BNSF. (*Id.*) Plaintiffs assert they have offered factual allegations proving BNSF's alleged "willful and wanton misconduct." (Doc.

87 at 26.) Plaintiffs have offered sufficient evidence to create a genuine dispute of material fact on the issue.

"A defendant's act is properly characterized as willful, wanton, or reckless ... only when it was apparent, or reasonably should have been apparent, to the defendant that the result was likely to prove disastrous to the [injured party], and he acted with such indifference toward, or utter disregard of, such a consequence that it can be said he was willing to perpetrate it." *Harmon v. Billings Bench Water Users Ass'n*, 765 F.2d 1464, 1467–68 (9th Cir. 1985) quoting *Hannigan v. Northern Pac. Ry. Co.,* 384 P.2d 493, 499 (1963) (quoting *Le Compte v. Wardell,* 333 P.2d 1028, 1030 (1958) (quoting 38 Am.Jur. Negligence § 178, at 855–56)). "An intent to injure is not a necessary element of reckless and wanton misconduct." *Id*. quoting *Mallory v. Cloud,* 535 P.2d 1270, 1271–72 (1975).

*Hannigan v. N. Pac. Ry. Co.*, 384 P.2d 493, 499 (Mont. 1963), reversed the trial court's award of a directed verdict on the issue of willful and wanton misconduct. *Hannigan* concluded that the "crossing involved may have been such as to require a consideration by the jury" on the issue. *Id*. at 500. The facts indicated that there were no major obstructions blocking the view of the railroad for vehicles at the crossing, the "driver would look more than ninety degrees to his right away from the sun" to see an approaching railroad, and the driver was well-aware there was a railroad crossing. *Id*. *Hannigan* concluded that despite these strong inferences

9

favoring the defendant's arguments, sufficient factual dispute existed over willful and wanton misconduct concerning the engineer's actions and the warning system of the railroad such that the jury should hear the issue. *Id*.

Other courts have discussed the issue of failure to warn and fence/barricade on the part of railroads and routinely finds the matter is properly presented to the jury. *White v. CSX Transportation, Inc.*, No. 19-CV-500 (HKS), 2023 WL 7166523, at *6 (W.D.N.Y. Oct. 31, 2023), *reconsideration denied*, No. 19-CV-500SR, 2024 WL 3403216 (W.D.N.Y. July 12, 2024), concluded that a sufficient factual dispute existed as to the obviousness of the risk of railroad switches such that reasonable minds might disagree about whether the plaintiff sufficiently appreciated the danger. *Rhinehart v. CSX Transportation, Inc*., No. 10-CV-86(LJV)(LGF), 2017 WL 3500018, at *7 (W.D.N.Y. Aug. 16, 2017), concluded that questions over the scope of the railroad's duty, including regarding "no trespassing signs" and fences, presented a question for the jury. *Rhinehart* concluded that despite strong legal arguments on the defendant railroad's side—such as a law stating that the railroad only has to erect fences or barriers pursuant to statutory mandate or "extraordinary circumstances"—there were material issues of fact sufficient to preclude summary judgement. *Id*. at 8.

The Third Circuit similarly reversed the district court's order granting summary judgement on issues of a railroad's duties to plaintiffs in *Bouchard v. CSX*

10

*Transp., Inc.*, 196 F. App'x 65 (3d Cir. 2006). *Bouchard* stated that "[t]he question of whether a railroad has fulfilled this duty "present[s] a classic jury question," such that a trial court, in most cases, is "unjustified in removing any aspect of the case from the jury's consideration." *Id*. at 71. The factual disputes in *Bouchard* were similar to those in this case. *Id*. *Bouchard* discussed the failure to sound the horn, failure to maintain proper personnel, and the failure of personnel to observe proper operating rules, among other claims. *Id*. at 71-73. BNSF seeks to distinguish the issue at hand from these cases but the Court does not find that the small factual distinctions compel a different result in this case. (Doc. 102 at 5-6.) The case law demonstrates that, when presented with sufficient factual allegations by the non-moving party, issues over a railroad's reasonable duties should be decided by the jury.

Plaintiffs' factual allegations present sufficient evidence to demonstrate dispute as to a material fact. The allegations concerning poor trespassing signage, failure to remove evidence of a past crossing, failure to erect additional barriers, and the failure of the railroad to ensure its Engineer was in proper condition to operate the train prove similar to the factual disputes presented in case law. The Court cannot make factual findings or credibility determinations or otherwise weigh evidence relevant to dispute facts at the summary judgement stage. *Anderson, Inc.*, 477 U.S. at 255. The Court will deny BNSF's motion for summary judgement on the issue of

11

BNSF's alleged willful and wanton misconduct under Montana's recreational use statute.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Defendants' Motion for Summary Judgement (Doc. 70) is **DENIED.**

**DATED** this 9th day of October, 2025.

/s/ Brian Morris

Brian Morris, Chief District Judge
United States District Court